IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **KATHRYN ERICKSON and LONNIE HOGAN,** <br><br> Plaintiffs, <br><br> vs. <br><br> **UINTAH SPECIAL SERVICES DISTRICT aka UINTAH TRANSPORTATION SPECIAL SERVICES DISTRICT, UINTAH SPECIAL SERVICES ADMINISTRATIVE CONTROL BOARD, UINTAH COUNTY, UINTAH COUNTY COMMISSION, LLOYD SWAIN,** <br><br> **Defendants.** | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No.  2:02CV581DAK |

This matter is before the court on Defendants Uintah Special Services District and the Uintah Special Services District Administrative Control Board's (collectively "USSD") Motion for Summary Judgment.[1]  A hearing on the motions was held on November 15, 2006. At the hearing, Plaintiffs were represented by Reed Adams, and Defendant USSD was

---

[1] Uintah Special Services District and Uintah Special Services District Administrative Control Board are named as separate Defendants in the Amended Complaint but the District and the Board are not distinct legal entities.  The Board is simply the body delegated the authority to exercise the rights, powers, and authority of the District.  *See*  Utah Code Ann. §§ 17A-2-1313(2)(a), -1326.  Therefore, the Defendants have the same representation and have filed a joint brief collectively as USSD.

represented by Benson L. Hathaway. After carefully considering the pleadings, memoranda, and other materials submitted by the parties and the law and facts relating to this matter, and now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

USSD moves to dismiss Erickson's third claim for retaliatory discharge under the False Claims Act arguing that Erickson cannot make out a prima facie case of retaliation and even if she could, USSD had a legitimate, non-retaliatory basis for terminating Erickson. The third claim is the only claim remaining in this case. The first and second claims were dismissed in the court's June 6, 2005 Memorandum Decision and Order. The fourth claim was dismissed pursuant to the parties' stipulation.

Erickson was employed as USSD's General Manager from June 1996 through January 2001. At the time she was hired, she was the only employee of USSD. Erickson's duties for USSD included preparing all documentation, preparing all public notices, communicating with the board members of USSD, inspecting work sites, and communicating with engineers about USSD's requirements for projects. Erickson's duties also included the preparation of contracts and the execution of contracts on behalf of USSD.

According to Erickson's Amended Complaint, she disapproved of several practices of the USSD which she believed were illegal and fraudulent. She claims that in retaliation for these complaints, USSD threatened, harassed, demoted, and ultimately discharged Erickson. In 1997, a number of billing discrepancies occurred between USSD and Uintah County. Erickson took her concerns to the USSD Board, which directed her to raise her concerns with the County. USSD also asked Erickson to retain an independent auditor and address her concerns to the auditor. According to her deposition testimony, both the USSD and the

County supported her efforts to resolve these billing discrepancies.  Erickson also took the information regarding the billing discrepancies to the offices of UDOT, the State Auditor, and the Utah Attorney General.

In 1999, Lloyd Swain was elected as a County Commissioner for Uintah County.  Swain and Erickson did not get along.  Swain told Erickson that he did not think she was a good manager, that he did not think she should have the position she had, and that when he had the power to do so, she would no longer have her position.  Erickson testified in her deposition that USSD defended her completely against Swain's accusations and she maintained a good relationship with USSD until at least October 2000.

In August 2000, Erickson attended a meeting between the County Commissioners, the USSD Board, and other individuals to resolve the billing discrepancies with the County.  Erickson described the USSD as being supporting of resolving the discrepancies.

In September 2000, Erickson learned that the County had used USSD materials to improve Stanton Road without her or USSD's knowledge.  She brought this information to USSD's attention and she testified that the Board was upset and reclaimed some of its equipment from the County.  The USSD Board convened a meeting at which all of the members supported the principle that USSD should be treated as a distinct entity from the County and the County should not use USSD's equipment without permission.

Following the Board meeting on the Stanton Road situation, the USSD Board also became more attentive to the work performed by Erickson and questioned her more extensively on how projects were being handled, the location of equipment, and billings.  Erickson admits that none of these inquiries were inappropriate.  On November 20, 2000,

Erickson was summoned to a USSD Board meeting in which she was informed that she would be placed on administrative leave pending an audit of USSD.

Foley, the independent auditor retained by USSD, conducted an investigation and issued a report on December 15, 2000.  The Audit Report uncovered numerous problems and questions regarding payments made by USSD that were not in conformance with USSD's stated policies.  There were also questions raised as to the propriety of certain contracts entered into by Erickson without Board approval.  Erickson disagrees with much of the report.  However, she was not given an opportunity to respond to the reports.  Based on the Audit Report, the USSD terminated Erickson on January 4, 2001.

Prior to Erickson's termination, on January 21, 2000, USSD was subpoenaed to provide documents to the federal Grand Jury.  On March 10, 2000, Erickson was subpoenaed to testify before the Grand Jury and provide handwriting exemplars.  On July 21, 2005, Erickson was indicted in this court for obstruction of justice for knowingly falsifying two USSD documents.

## DISCUSSION

The False Claims Act forbids the discharge of an employee in retaliation for the investigation of false claims activity.  31 U.S.C. § 3730(h).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) the employer is covered by the act at issue, (2) the employee engaged in protected activity, (3) the employee suffered adverse action, and (4) there is an inference of causation between the protected activity and the adverse action." *Mann v. Olsten Certified Healthcare Corp.*, 49 F. Supp. 2d 1307, 1313 (M.D. Ala. 1999).

For purposes of this motion, USSD is willing to concede the first three elements. Therefore, the only relevant issue in this motion is the causal connection element. To prove a causal connection between her false claims investigation and her termination, Erickson must have direct evidence of USSD's retaliatory intent or indirect evidence creating an inference of retaliation. *Id.* at 1316. "Direct evidence is evidence that established the existence of intent behind the employment decision without any inference or presumption." *Id.*

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the adverse employment action. *Marx v. Schnuck's Markets*, 76 F.3d 324 (10th Cir. 1996). At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir. 1994). A plaintiff may establish that a reason for termination is pretextual by "showing either that a discriminatory reason more likely motivated the employer or . . . that the employer's proferred explanation is unworthy of credence." *Marx*, 76 F.3d at 327-28.

In its Motion for Summary Judgment, USSD argues that Erickson has no direct evidence because she admits that USSD was aware of her investigation and supported her until at least October 2000. Even then, USSD did not express any direct concerns about her desire to rectify billing discrepancies with the County. USSD also expressed agreement that it be considered a separate entity. At this time, however, USSD intensified its review of all of its dealings and began inquiring more into Erickson's actions. Erickson admitted that

none of these inquiries into her performance were inappropriate.  Therefore, USSD asserts that there is no direct evidence of any retaliatory intent.

Plaintiff acknowledges that remarks by non-decision makers or remarks unrelated to a decision making process itself are not direct evidence of discrimination.  *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 19998).  Nonetheless, Plaintiff then relies on statements by Merlin Sinfield, a USSD board member, who stated that the County was putting a lot of pressure on the board and that Erickson needed to be very careful so she would not end up like a woman who was fired in Flaming Gorge.  Erickson contends that Sinfield said that he hoped that they could get things straightened out.

Even though these comments were not made in a Board meeting and there is no evidence that Sinfield was in charge of the Board, Erickson claims that he was a decision maker.  Erickson's reliance on Merlin Sinfield's statements as direct evidence of retaliatory intent is not supported by the evidence.  Although Erickson construes Sinfield's statements as a warning, it is clear that they were supportive.  In addition, the statements are too vague to infer what Sinfield was actually conveying.  The conversation simply does not bear the weight she puts on Sinfield's statements.

Erickson also claims that Sinfiled's comments are direct evidence, when combined with (i) the fact that Uintah County Commission had directed the USSD Board to fire its employees prior to hiring Erickson, (ii) the fact that Lloyd Swain had threatened to terminate Erickson's job when he had sufficient power, and (iii) the fact that Uintah County persistently pressured the USSD Board to fire Erickson.  However, the need to associate his comments with other facts alone demonstrates that the comment is not direct evidence of retaliation.

With respect to indirect evidence, USSD argues that the proximity of the protected activity and the adverse employment action is not sufficiently close. *See Conner v. Schnuck Markets*, 121 F.3d 1390, 1395 (10th Cir. 1997). USSD asserts that Erickson began her investigation in 1998 and was not terminated until over two years later. Therefore, temporal proximity does not establish causation in this case. In addition, USSD asserts that there is not a pattern of retaliatory conduct in this case because the Board was supportive of Erickson's actions up until the November 2000 meeting when she was put on administrative leave pending an investigation by the FBI and the Audit Report by the independent auditor.

Erickson contends that an examination of the timeline of events in this case demonstrates clear evidence of retaliation based upon her protected activity. In 1997, she began to examine inappropriate use of USSD funds by Uintah County. Erickson informed several entities. In 1999, Lloyd Swain was elected as a County Commissioner and he expressed his desire to have Erickson fired. Erickson acknowledges that the USSD Board initially supported her and requested that she obtain an employment agreement from legal counsel to protect herself against the pressure being asserted by Swain. When the agreement was drafted, however, the USSD Board failed to adopt it and left her unprotected.

In addition, in September and October of 2000, when Erickson learned of the Stanton Road situation and informed the USSD Board, they did not take the actions she favored. She states that she contacted the director of the Utah Association of Special Districts and legal counsel for USSD and both supported the USSD bringing a lawsuit against the County. But USSD declined to bring such an action. Instead of requiring accountability of the County, USSD began scrutinizing the actions of Erickson. And, in November of 2000, Erickson was

placed on administrative leave pending investigations into her actions.  She was then terminated after the independent auditor issued his Audit Report.

Erickson argues that she has presented clear evidence that her leave and termination was retaliation against her for her ongoing attempts to make the County accountable through complaining and reporting.  The fact that the USSD Baord supported her to some degree does not change the fact that the ongoing pressure of the County to fire Erickson was the cause of her termination.

USSD contends that Erickson's theory of the case rests on untenable premises.  After three years of supporting Erickson, she does not provide an explanation for why USSD would reverse course in October or November 2000.  Although she seems to claim that it was a result of the County's persistent strong-arming of USSD, she cannot explain the ebb and flow of the County's alleged influence.  She claims that the County strong-armed USSD into firing all employees previous to her, the County had no influence during her first three years of employment, and then the County's influence allegedly resurfaces.  USSD asserts that a far more rational explanation for Erickson's termination is that it arose from an audit of USSD that was requested by an independent, outside source—the FBI—and was conducted by an independent, outside auditor.  The audit demonstrated irregularities directly within Erickson's purview.

Furthermore, USSD claims that Erickson's evidence of retaliation is nothing more than being upset with USSD's response to the County with respect to the Stanton Road situation.  Despite the USSD's agreement that it should be considered a separate entity, she is upset that USSD did not sue the County and refused to do anything affirmative to make the County accountable.  This does not constitute or infer a discriminatory intent.  The fact that

a special district does not want to go to the expense of a lawsuit to establish its independence is not related to its intentions with respect to Erickson.  In addition, USSD's refusal to adopt Erickson's employment agreement, placement of her on administrative leave, and termination is not retaliatory when questions of her conduct have surfaced.  Finally, UUSD asserts that any inference of retaliation is rebutted by the independent Audit Report.

However, even assuming that she has provided enough evidence to establish a prima facie case of retaliatory discharge to withstand summary judgment, the court concludes that she cannot demonstrate that the USSD's reliance on the Audit Report was not a legitimate, non-discriminatory basis for her termination.

Erickson contends that the Audit Report fails to establish that she was responsible for the decisions and the manner in which the USSD was operated.  She also takes issue with the report because she was not given an opportunity to respond to the audit.  She contests each of the items presented in the report and claims that each of the items were known and approved by the USSD Board.  Erickson argues, therefore, that there are genuine issues of material fact relating to the propriety of the Audit Report and the Board's reliance on the report which preclude summary judgment.

In considering the USSD's reliance on the Audit Report in Erickson's termination, this court does "not sit as a kind of 'super-personnel department,' free to second guess the propriety of an employer's business decision." *Eilam v. Children's Hospital Ass'n*, 1999 U.S. App. LEXIS 5880, 10 (10th Cir. 19999).  The burden is on Erickson to demonstrate that USSD's stated basis for termination "is so weak, implausible, contradictory, inconsistent, or incoherent as to be unworthy of belief." *Stover*, 382 F.3d at 1073.

It is unnecessary for USSD to defend every conclusion of the Audit Report because it was the product of an outside, independent auditor and any one of its findings would be sufficient grounds for terminating Erickson.  The independent auditor found multiple problems with the conduct of USSD's making and execution of contracts, the work specifically and indisputably performed by Erickson.  Contracts were created and executed by Erickson without any evidence of USSD approval or knowledge.  In at least one case, the written contract appears to be an after-the-fact fabrication.  Another document appears to have been created specifically to conceal some of this misconduct from the grand jury investigation.  In light of the Audit Report and Erickson's lack of evidence demonstrating that it was a pretextual construct contrived by USSD, no reasonable jury could conclude that USSD lacked a legitimate justification for terminating Erickson when it did.

USSD does not rely on Erickson's subsequent indictment for Erickson's termination because she was terminated long before she was indicted.  USSD also does not rely on the indictment as proof that Erickson committed that alleged criminal acts.  Rather, USSD uses the fact of indictment only to show its good faith belief in the Audit Report.  "Once an employee is indicted on job-related charges, . . . an agency has the 'reasonable cause' to justify suspending an employee.  This is so because an indictment must be based upon 'probable cause' to believe the named individual committed the acts charged."  *Brown v. Department of Justice*, 715 F.2d 662, 664 (D.C. Cir. 1983).  The indictment rebuts Erickson's ability to argue that the Audit Report findings are too weak to be believed.  Therefore, USSD is entitled to summary judgment on Erickson's retaliation claim.

## CONCLUSION

For the foregoing reasons, USSD's Motion for Summary Judgment is GRANTED, and this case is dismissed with prejudice, each party to bear its and her own fees and costs. The clerk of court is directed to enter judgment in favor of defendants.

DATED this 8th day of January, 2007.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge